| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>JANE DOE #1 AND JANE DOE #2,<br>                          Plaintiffs,<br>          -against-<br>JETBLUE AIRWAYS CORPORATION, ERIC JOHNSON, individually, and DAN WATSON, individually,<br>                          Defendants. | **MEMORANDUM & ORDER**<br>**19-CV-1542 (NGG) (CLP)** |

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiffs Jane Doe #1 and Jane Doe #2 bring this action against Defendants JetBlue Airways Corporation ("JetBlue"), Eric Johnson, and Dan Watson. Plaintiffs, who are JetBlue flight attendants, allege that while on layover at a hotel in San Juan, Puerto Rico on May 9, 2018, Defendants Johnson and Watson, who are JetBlue pilots, sexually assaulted or attempted to sexually assault them, and that JetBlue took no corrective action after Plaintiffs reported the incident. Plaintiffs assert claims of discrimination, hostile work environment, and retaliation under federal, state, and local law against all Defendants as well as various tort claims against Johnson and Watson individually. Before the court are Defendants' motions to dismiss for improper venue, lack of jurisdiction, and failure to state a claim. (*See* JetBlue Mot. to Dismiss ("JetBlue Mot.") (Dkt. 34); Johnson Mot. to Dismiss ("Johnson Mot.") (Dkt. 30); Watson Mot. to Dismiss ("Watson Mot.") (Dkt. 35).) For the reasons that follow, the court agrees with Defendants that venue in the Eastern District of New York is improper, and transfers this case to the District of Massachusetts. The court defers decision on the merits of Defendants' motions to the transferee court.

## I. BACKGROUND

### A. Facts[1]

Jane Doe #1 and Jane Doe #2 are JetBlue flight attendants based, at all relevant times, out of Boston. (*See* Am. Compl. ¶¶ 10-11; 14; *see also* Decl. of Michael Fiske ("Fiske Decl.") (Dkt. 34-2) at ¶¶ 9-10.)[2] On May 9, 2018, Plaintiffs worked a flight from Washington D.C. to San Juan, Puerto Rico, and then a returning flight the next morning to Newark, New Jersey. (Am. Compl. ¶¶ 21, 48.) Plaintiffs arrived in San Juan around 1:00pm. (*Id.*) Upon arrival, Plaintiffs and a third crewmember checked in at their hotel and went to the beach. (*Id.* ¶¶ 22, 49.)

At the beach, Plaintiffs and the third crewmember noticed two men sitting near them pulling beers out of a lunch bag. (*Id.* ¶¶ 24, 51.) The two men were Defendants Johnson and Watson. (*Id.*) The two groups began talking, and Plaintiffs learned both men were JetBlue pilots. (*Id.*) Johnson and Watson were also based out of Boston at the time. (Fiske Decl. ¶ 14.) After some time, Johnson handed a beer from his lunch box to Jane Doe #1. (Am. Compl. ¶¶ 25, 52.) Jane Doe #1 drank some of the beer then handed it to Jane Doe #2. (*Id.*) Jane Doe #2 then drank some of the beer and handed it to the third crewmember who also drank from it. (*Id.*) Plaintiffs assert the drink was laced with

---

[1] The court takes the following statement of facts largely from the amended complaint, the allegations of which the court generally accepts as true for the purposes of Defendants' motions to dismiss. See *N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017). However, and as explained in more detail below, because Defendants have moved to dismiss for improper venue pursuant to Rule 12(b)(3), the court also considers "evidentiary matters outside the pleadings, by affidavit or otherwise, regarding the existence of jurisdiction." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013).

[2] Jane Doe #1 was transferred to John F. Kennedy International Airport in New York on November 1, 2018. (Fiske Decl. ¶ 9.)

a drug, and after drinking it, the rest of the day became a blur for Plaintiffs and the third crewmember. (*Id.*)

Jane Doe #1 does not remember leaving the beach or returning to the hotel. (*Id.* ¶ 26.) The amended complaint describes Jane Doe #1's remaining memories of the night as follows:

> [Jane Doe #1], in a haze from being drugged, next became aware that she was in bed with Defendant JOHNSON and her fellow crewmember. Defendant JOHNSON was on top of Plaintiff raping her by penetrating her vaginally against her will. Plaintiff felt the influence of the drug that Defendant JOHNSON laced the beer with, and Plaintiff was unable to react to the situation, but was simply aware that it was happening. Plaintiff's flashes of memory included Defendant JOHNSON having sexual intercourse with the other crewmember who was also under the influence of the drugs. Defendant JOHNSON also said, "thank you for making my fantasy come true."

(*Id.* ¶ 27.) When she awoke the next morning, Jane Doe #1 was "groggy and felt numb." (*Id.* ¶ 28.) She, along with Jane Doe #2 and the third crew member, "were all nauseous and each had to use the bathroom to vomit, an effect they had not felt before despite having consumed alcohol previously." (*Id.*) On the return trip to Newark, Jane Doe #1 "spoke with the third female crewmember who had also been drugged and raped, and they both expressed that they were stunned with what had happened." (*Id.*)

After drinking the beer on the beach, the next memory Jane Doe #2 had was being on the elevator at Plaintiffs' hotel in San Juan. (*Id.* ¶ 53.) She does not recall how she left the beach and got to the elevator, nor does she recall most of the night because of the drugs that she ingested, though she does remember vomiting several times throughout the night. (*Id.*) Plaintiffs assert that Johnson and Watson drugged and intended to rape Jane Doe #2,

but refrained from doing so when she started vomiting. (*Id.* ¶ 54.) On May 10, 2018, Jane Doe #2 woke up nauseous, tired, and in an "out of body fog." (*Id.* ¶ 55.) She vomited repeatedly on the return flight home. (*Id.*) She further claims she had never felt such sleepiness and upon arrival at her hotel in Newark, she fell back asleep for an extended period. (*Id.*) It was not until three days later that Jane Doe #2 stopped feeling nauseous and foggy from the drugs. (*Id.* ¶ 57.)

Plaintiffs texted each other and met up in Jane Doe #2's hotel room upon returning to Newark. (*Id.* ¶¶ 30, 56.) The third crewmember later joined. (*Id.*) The three discussed what had occurred and the effects they felt from being drugged by Johnson and Watson, and researched "the symptoms of rape drugs and found the symptoms consistent with" how they felt after drinking Johnson and Watson's beer. (*Id.* ¶ 30.) They further discussed how Jane Doe #1 and third crewmember were sexually assaulted and raped by Johnson. (*Id.* ¶¶ 30, 56.) Jane Doe #1 asserts that she developed a fear that she may have contracted a sexually transmitted disease from Johnson, and she emailed Johnson and asked him to contact her. (*Id.* ¶ 29.) She later received an email back from Johnson saying he would get tested for sexually transmitted diseases. (*Id.* ¶ 31.)

On May 11, 2018, Jane Doe #1 returned home to Utah and went to the hospital where she reported that she had been sexually assaulted. (*Id.* ¶ 32.) She was tested for sexually transmitted diseases and given medication to help prevent them. (*Id.* ¶ 32.) Subsequently, the hospital reported the incident and the Utah police prepared a report. (*Id.*) Jane Doe #1 was soon informed by her doctor that she contracted Human Papillomavirus ("HPV"). (*Id.* ¶ 34.) Plaintiff had been tested for sextually transmitted diseases prior to the incident in Puerto Rico and had

tested negative. (*Id.*)  She asserts that she could have only contracted HPV from Johnson and that he intentionally gave her the disease. (*Id.* ¶¶ 34-35.)

Plaintiffs allege that Jane Doe # 1 reported the sexual assault "to [JetBlue] at their corporate headquarters in New York" (*id.* ¶ 33), and that Jane Doe #2 reported the attempted sexual assault "to [JetBlue] in their New York headquarters," (*id.* ¶ 58). Plaintiffs allege neither when nor to whom they reported the incidents. In a declaration annexed to JetBlue's motion to dismiss, Michael Fiske, JetBlue's Regional Manager of Crew Relations based out of Boston, avers that: (1) on or about May 12, 2018, Jessica Diorio, a Boston-based JetBlue human resources employee, informed him that Jane Doe #1 had contacted her regarding the incident with Johnson, and (2) that JetBlue never received a report or complaint from Jane Doe #2 about the incident in Puerto Rico. (Fiske Decl. ¶¶ 17, 26.) JetBlue commenced an investigation into Jane Doe #1's allegation, which was conducted by Boston-based employees, including Fiske. (*Id.* ¶24.)

Plaintiffs assert that, despite making JetBlue aware of the incident in Puerto Rico, JetBlue took "no corrective action." (Am. Compl. ¶ 33.) This included failing to guarantee that Plaintiffs would not run into Johnson or Watson at work. (*Id.* ¶¶ 38, 61.) Plaintiffs further claim they were forced to affirmatively opt out of working Embraer E190 aircraft flights because Johnson and Watson would work those flights. (*Id.* ¶¶ 39, 62.)  Avoiding these flights precludes Plaintiffs from working on more than 750 flights, which has a negative impact on their seniority status and financial opportunities.[3] (*Id.*)

Plaintiffs also allege that the incident in Puerto Rico has affected their daily work experience. For example, Jane Doe #1 tries to

---

[3] The amended complaint does not specify over what period of time Plaintiffs were unable to work these flights.

5

avoid layovers in San Juan and avoids interacting with other crew members if she is scheduled for a layover in San Juan. (*Id.* ¶ 40.) She generally tries to avoid layovers and makes sure not to have more than one drink if she does. (*Id.* ¶ 41.) Further, Jane Doe #1 claims to avoid work lounges outside of New York and researches Johnson and Watson's flight schedules to make sure they do not overlap with her own. (*Id.* ¶ 42.) In or around February 2019, Jane Doe #2 ran into Johnson in an employee break room in San Juan. (*Id.* ¶ 63.) Jane Doe #2 was having lunch with fellow crew members, but immediately began to panic when she saw Johnson and immediately left the area. (*Id.*)

Plaintiffs allege that Defendants' actions made them feel humiliated, degraded, victimized, embarrassed and emotionally distressed. (*Id.* ¶¶ 43, 64.) Plaintiffs claim they have suffered and will continue to suffer from loss of income, salary, bonuses, benefits, and other compensation which employment entails. (*Id.* ¶¶ 44, 65.) Furthermore, Plaintiffs claim pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, other non-pecuniary losses, severe emotional distress and physical distress. (*Id.*)

### B. Procedural History

Plaintiffs filed their original complaint on March 18, 2019 (Compl. (Dkt. 1)), and their amended complaint on September 24, 2019. (Am. Compl.) Each Defendant has moved to dismiss Plaintiffs' amended complaint. JetBlue moves to dismiss Plaintiffs' amended complaint for improper venue and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(3), (6). (*See* JetBlue Mot.; Mem. in Supp. of JetBlue Mot. ("JetBlue Mem.") (Dkt. 34-1).) Johnson moves to dismiss Plaintiffs' amended complaint for: (1) lack of subject-matter jurisdiction, (2) lack of personal jurisdiction, (3) improper venue, and (4) failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1)-(3), (6). (*See* Johnson Mot.; Mem. in Supp. of Johnson Mot.

("Johnson Mem.") (Dkt. 31).) Watson moves to dismiss Plaintiffs' amended complaint for: (1) lack of personal jurisdiction, (2) lack of subject matter jurisdiction, (3) improper venue, and (4) failure to state a claim. (*See* Watson Mot.; Mem. in Supp. of Watson Mot. ("Watson Mem.") (Dkt. 35-1).)[4] Plaintiffs oppose Defendants' motions. (*See* Mem. in Opp. of Defs.' Mot. to Dismiss ("Opp.") (Dkt. 32).)

## II. LEGAL STANDARD

### A. Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) provides for dismissal of a complaint for improper venue. To survive such a motion, "the plaintiff bears the burden of establishing that venue is proper." *Cold Spring Harbor Lab. v. Ropes & Gray LLP*, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011).[5] "If the court relies only on pleadings and affidavits, the plaintiff need only make a prima facie showing of venue." *Zaltz v. JDATE*, 952 F. Supp. 2d 439, 447 (E.D.N.Y. 2013) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)). When considering a Rule 12(b)(3) motion, the court is permitted to consider facts outside the pleadings. *See Zaltz*, 952 F. Supp. 2d at 447; *see also* T*our Tech. Software, Inc. v. RTV, Inc.*, 377 F. Supp. 3d 195, 200 (E.D.N.Y. 2019) ("When faced with a motion to dismiss for improper venue, district courts may consider facts outside the pleadings."). In this way, "[p]ractice on a motion under Rule 12(b)(3) is relatively straightforward. All well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." *Corso v. Franz*, No. 16-cv-2384 (FB), 2018 WL 1513639, at *1 (E.D.N.Y. Mar. 27, 2018).

---

[4] Both Johnson and Watson joined JetBlue's motion to dismiss for improper venue. (Johnson Mem. at 11; Watson Mem. at 2.)

[5] When citing case law, except as otherwise noted, all citations and internal quotation marks have been omitted and all alterations have been adopted.

"Where a complaint alleges multiple claims, the plaintiff must establish that venue is proper as to each individual claim pled." *Al-Kaysey v. L-3 Servs. Inc.*, No. 11-cv-6318 (RRM), 2013 WL 5447686, at *6 (E.D.N.Y. Sept. 27, 2013).

### B. 28 U.S.C. § 1404(a)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any district or division where it might have been brought. . . ." The decision "to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross-Country) Productions, Inc. v. United Artists Corp.*, 865 F.2d 513, 520 (2d Cir. 1989). The purpose of the transfer statute is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

Courts apply a two-step inquiry under § 1404(a): "(1) whether the action could have initially been brought in the transferee court; and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer." *JetBlue Airways Corp. v. Helferich Patent Licensing*, LLC, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013). Courts review "notions of convenience and fairness . . . on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). Factors courts consider include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Peroutka v. Yeti Coolers*, LLC, 18-cv-6827 (AMD), 2020 WL 1283148, at *2 (E.D.N.Y. Mar. 17, 2020).

## III. DISCUSSION

### A. Venue Does Not Lie in this District for Plaintiffs' Title VII Claim

Venue in a Title VII claim is not determined by the general venue statue, 28 U.S.C. § 1391, but rather is strictly governed by 42 U.S.C. § 2000e-5(f)(3). *See Pardy v. Gray*, No. 06-cv-6801 (JBW), 2007 WL 1825200, at *3 (E.D.N.Y. June 22, 2007) ("The special venue statute contained in Title VII controls venue under the act to the exclusion of the general venue statute."). Section 2000e-5(f)(3) provides that a Title VII action

> may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

In this case, Plaintiffs do not satisfy the first basis for venue under the statute because all of the unlawful employment practices alleged in the amended complaint occurred in Puerto Rico and Boston, not New York. Plaintiffs attempt to get around this fact by alleging that JetBlue's "pattern and practice . . . of routinely ignoring employee complaints concerning sexual assault and/or sexual harassment" stems from their corporate headquarters in New York. (Am. Compl. ¶ 18.) Yet, these allegations are too vague and conclusory to satisfy Plaintiffs' burden to establish venue. *See, e.g., Cook v. UBS Fin. Servs., Inc.*, No. 05-cv-8842,

2006 WL 760284 (SHS), at *3-4 (S.D.N.Y. Mar. 21, 2006) (finding plaintiff's allegations that employment policies were developed in defendant's New York headquarters insufficient to establish venue because "it d[id] not necessarily follow . . . that any of the specific personnel decisions affecting [plaintiffs] were made in New York"); *see also Robinson v. Potter,* No. 04-cv-890, 2005 WL 1151429, *4 (D.D.C. May 16, 2005) ("Mere speculation of principal office involvement does not counter the fact that in the plaintiff's complaint, the acts committed occurred [in a different district]."). Further, JetBlue's ensuing internal investigation was conducted by Fiske and other Boston-based JetBlue employees, and Plaintiffs and the individual Defendants were all based in Boston at the time of the incident and directly afterwards. Plaintiffs' allegation that they each reported the incident to JetBlue's New York headquarter is also contradicted by the Fiske Declaration, which, unlike Plaintiffs' allegations, provides specific details (including the dates and personnel involved) showing that Jane Doe #1 reported the incident to Ms. Diorio, who was based in Boston. *See Corso*, 2018 WL 1513639, at *1. And, even assuming that both Plaintiffs did report the incident to JetBlue's New York headquarters, that would be still not be enough to establish venue in this District because Plaintiffs fail to plead any New York-based involvement by JetBlue in investigating or otherwise handling Plaintiffs' complaints. *Cf. Kassman v. KPMG LLP,* 925 F. Supp. 2d 453, 474 (S.D.N.Y. 2013) (venue properly laid in jurisdiction in which defendant's headquarters located because plaintiff adequately alleged that corporate policy was "developed in [defendant's] headquarters"). Accordingly, because Plaintiffs fail to specifically allege or otherwise present evidence of control or decision-making by JetBlue's New York headquarters, Plaintiffs do not satisfy the first basis for venue pursuant to Section 2000e-(5)(f)(3).

Nor do Plaintiffs satisfy the other bases for venue. The second and third bases for Title VII venue are inapplicable because the

amended complaint contains no allegations regarding the location of any relevant employment records, and Plaintiffs remain employed at JetBlue. And the final basis, *i.e.* venue based on location of the defendant's principal office, applies only when none of the other three bases is satisfied by another district. Here, however, venue would be proper in either the District of Puerto Rico or the District of Massachusetts. Accordingly, the court finds that venue in the Eastern District of New York is improper for Plaintiffs' Title VII claim.

When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Whether dismissal or transfer is appropriate lies within the sound discretion of the district court." *Minnette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993). When determining this issue, the court takes into account the ultimate goal of the "expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

Here, the court will transfer Plaintiffs' Title VII claim to the District of Massachusetts pursuant to Section 1406(a) because the interests of justice are furthered by transferring the claim as opposed to dismissing it. Plaintiffs' Title VII claim raises serious allegations—including that JetBlue failed to take action after two of its pilots drugged and then sexually assaulted (or, in the case of Jane Doe #2, attempted to sexually assault) JetBlue flight attendants—that deserve adjudication on the merits; and, as Defendants acknowledge, the claim could have been brought originally in the District of Massachusetts, because that is where Plaintiffs were based at the time of the incident, where Jane Doe #1 initially reported the alleged assault to JetBlue, where JetBlue conducted an initial internal investigation of her complaint, and where all employment records relevant to the claim are located.

Furthermore, because of Title VII's administrative requirements, it is not clear from the pleadings that any action Plaintiffs might bring following a dismissal of this case would be timely, an issue that transfer of this case would avoId. *See Wohlbach v. Ziady*, 17-cv-5790 (ER), 2018 WL 3611928, at *4 (S.D.N.Y. July 27, 2018) ("The Second Circuit has interpreted § 1406(a) broadly to allow transfers, especially when a plaintiff's claims would be time-barred by the applicable statutes of limitations if she refiles the case.") . The court, therefore, in the interests of justice, transfers Plaintiffs' Title VII claims to the District Massachusetts.[6]

### B. Plaintiffs' Remaining State Law Claims

Plaintiffs also assert numerous state law claims against JetBlue, Johnson, and Watson. These include claims against all Defendants under the NYSHRL and NYCHRL, as well as intentional infliction of emotional distress, and various tort claims against Johnson and Watson individually. (Am. Compl. ¶¶ 75-144.) While these claims are governed by the general venue statute, 28 U.S.C. § 1391(b), the court need not decide whether venue in the Eastern District of New York is proper for these claims, because it finds that transfer pursuant to § 1404(a) to the District of Massachusetts is in the interests of justice. *See Garcia v. Pearson Educ., Inc.*, No. 15-cv-7289 (KPF), 2016 WL 5921083, at *6 (S.D.N.Y. Oct. 7, 2016) (declining to adjudicate whether venue was properly laid where transfer pursuant to § 1404(a) was in the interests of justice).

As a preliminary matter, Defendants acknowledge, and Plaintiffs do not dispute, that Plaintiffs could have brought this action in

---

[6] Because the court transfers Plaintiffs' Title VII claim, it does not address the merits of that claim, and defers to the court receiving this case upon its transfer.

the District of Massachusetts.[7] Therefore, the first step of the § 1404(a) inquiry is satisfied. And while Plaintiffs' choice of venue is afforded deference, *see Rush v. Fischer*, 923 F. Supp. 2d 545, 556-57 (S.D.N.Y. 2013), it is not the only consideration. In this case, Defendants present strong arguments that Plaintiffs' choice of the Eastern District of New York is outweighed by the other relevant considerations of § 1404(a).

Under § 1404(a), the "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014). As Defendants correctly point out, the majority of conceivable witnesses in this case are located in either Puerto Rico or Boston, not New York. Jane Doe #2, the non-party crewmember who was also assaulted, Johnson, and Watson are all currently employed by JetBlue and based out of Boston. (Fiske Decl. ¶¶ 9-14.) The various JetBlue employees to whom Jane Doe #1 initially reported the incident and the employees who subsequently investigated the complaint are all based out of Boston. And, finally, any potential witnesses to the alleged assault would likely be in Puerto Rico. Accordingly, this factor weighs in favor of transfer out of the Eastern District of New York.

The locus of operative facts in this case also supports a transfer out of the Eastern District of New York. A court determining the locus of operative facts looks to "the site of the events from which the claim arises." *Zaltz*, 952 F. Supp. 2d at 460. Here, the sites of

---

[7] *See* JetBlue Mem. at 16 n.5; Watson Mem. at 2 n.3 (joining JetBlue's motion to dismiss for improper venue); Johnson Mem. at 11 (same). Plaintiffs argue that venue is proper in the Eastern District of New York for all claims, and that this court should not transfer Plaintiffs' claims under § 1404(a). (Opp. at 5-15.) However, while identifying that, under § 1404(a), the transferee court must be a forum in which the action could have been originally brought, (*see id.* at 9), nowhere do Plaintiffs dispute that this action could have originally been brought in the District of Massachusetts.

the events from which Plaintiffs' claims arise are Puerto Rico (where the alleged assaults took place) and Boston (where all relevant parties were based at the time of the incident, where the incident was first reported, and where JetBlue first investigated the incident). Plaintiffs' conclusory argument that "many of the operative facts occurred in New York," (Opp. at 11) is unsupported by the pleadings; as such, this factor weighs in favor of transfer.

Two additional factors also support transfer to the District of Massachusetts in particular. First, the court is transferring Plaintiffs' Title VII claim to the District of Massachusetts, so transferring state and local claims arising out of the same nucleus of operative facts supports judicial economy and efficiency. Second, in examining whether transfer is appropriate, "[c]ourts have concluded that it conserves judicial resources, and furthers the interests of the parties, to transfer a case from a forum in which there is a difficult question of personal jurisdiction or venue to a district in which there are no such uncertainties." *Peroutka*, 2020 WL 1283148, at *5 (collecting cases). Here, although the court declines to reach the issue, it is self-evident that whether this court has personal jurisdiction over Defendants Johnson and Watson is a "difficult question," given that the alleged assaults took place in Puerto Rico and that both Johnson and Watson are based out of Boston and have little, if any, contacts with New York. On the other hand, it appears that Johnson and Watson have much stronger contacts with Massachusetts; it is where both pilots are based, and it is the jurisdiction through which both pilots fly commercial flights. Transfer to the District of Massachusetts, therefore, would serve one of the purposes of the transfer statutes, which is to "eliminate impediments to the timely disposition of cases and controversies on their merits." *Minnette*, 997 F.2d at 1026.

Accordingly, because the relevant § 1404(a) factors support transfer[8], the court will exercise its discretion and transfer Plaintiffs' remaining claims to the District of Massachusetts.

## IV. CONCLUSION

For the reasons stated above, the court transfers this case to the District of Massachusetts and defers decision on Defendants' motions to dismiss to thetransferee court. Pursuant to Local Civil Rule 83.1, the Clerk of Court is respectfully DIRECTED, after seven days, to effectuate the transfer of the case to the District of Massachusetts.

SO ORDERED.

Dated:   Brooklyn, New York
         August 11, 2020

                                              /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

---

[8] The court has considered the remaining § 1404(a) factors—including location of relevant documents, convenience of the parties, availability of process, and relative means of the parties—and finds that they are either neutral or weigh in favor of transfer.