IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

JANE DOE #1 and JANE DOE #2,

    **Plaintiffs,**

           v.

JETBLUE AIRWAYS CORPORATION, ERIC JOHNSON, individually, and DAN WATSON, individually,

    **Defendants.**

CIVIL NO. 21-1356 (JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court are three motions to dismiss: co-Defendant JetBlue Airway Corporation's ("JetBlue") Motion to Dismiss, Docket No. 125; co-Defendant Eric Johnson's ("Johnson") Motion to Dismiss, Docket No. 126; and co-Defendant Dan Watson's ("Watson") Motion to Dismiss, Docket No. 127. Pursuant to the reasoning in this Opinion and Order, Defendant Watson's Motion to Dismiss and JetBlue's Motion to Dismiss are hereby **GRANTED**. Defendant Johnson's Partial Motion to Dismiss is hereby **GRANTED**.

## BACKGROUND[1]

The Court warns that the facts in the case at hand are upsetting and hard to recount. Plaintiff Jane Doe #1 and Plaintiff Jane Doe #2 (collectively, "Plaintiffs") are female flight attendants employed by JetBlue. Docket No. 119 at ¶ 2. Plaintiffs are based out of Logan Airport in

---

[1] The facts are taken from Plaintiffs' Third Amended Complaint, Docket No. 119, and are presumed to be true. *See Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012).

CIVIL NO. 21-1356 (JAG)                                                                   2

Boston, MA. *Id.* On May 9, 2018, Plaintiffs worked a flight from Ronald Reagan Washington National Airport in Washington D.C. to Puerto Rico's Luis Muñoz Marín International Airport, landing at around 1:00 pm. *Id.* at ¶ 12. Plaintiffs were on a layover in Puerto Rico until they departed to New Jersey the next day at 2:30 am. *Id.* Plaintiffs arrived at the Intercontinental Hotel, along with another female crewmember, where they were to spend the night. *Id.* at ¶ 13. Plaintiffs and the other crewmember then went to the beach. *Id.* at ¶ 14. While at the beach, Plaintiffs and the crewmember began speaking to two men, Defendants Johnson and Watson, and discovered they were also employed by JetBlue as pilots. *Id.* at ¶ 15. Defendants Johnson and Watson were drinking beers stored in a lunch bag. *Id.* As the five JetBlue employees continued to converse, Defendant Johnson handed Plaintiff Doe #1 an open beer can he had removed from his lunch bag. *Id.* at ¶¶ 16, 44. Plaintiff Doe #1 drank from the open beer can, passed it to Plaintiff Doe #2 who did the same, and Plaintiff Doe #2 passed the can to the crewmember who also drank from the can. *Id.* Unbeknownst to Plaintiffs and the crewmember, the beer was laced with a drug. *Id.* After drinking from the open beer can, "the night became a blur" for the women. *Id.* Plaintiffs do not recall when they left the beach and returned to the hotel. *Id.* at ¶¶ 16, 17, 44, 45.

Plaintiff Doe #1's next memory was waking up in a bed—in a haze, from the drug that had surreptitiously been given to her—as Defendant Johnson raped her. *Id.* at ¶ 18. Because she had been drugged, Plaintiff Doe #1 was unable to react. *Id.* Plaintiff Doe #1 recalls the crewmember—who was likewise drugged—was also in the bed and raped by Defendant Johnson. *Id.*

Plaintiff Doe #2's next memory after the beach was in the elevator of the hotel. *Id.* at ¶ 45. Once in the elevator, Plaintiff Doe #2 recalled Defendant Johnson said, "we'll take [Plaintiff Doe #2] up to her floor first." *Id.* Plaintiff Doe #2 proceeded to vomit throughout the night and felt

"sick from the drugs." *Id.* Plaintiff Doe #2 experienced nausea, extreme tiredness, and grogginess for at least three days after the alleged drugging. *Id.* at ¶ 49. Plaintiff Doe #2 believes that Defendants Johnson and Watson "put her in [the] elevator with the purpose and intent to take her to her room and rape her and the other two flight attendants, but because of her condition they did not end up raping her." *Id.* at ¶ 50.

The following morning, Plaintiffs and the crewmember all experienced extreme nausea, dizziness, and loss of memory; each vomited while on the flight to Newark Airport in New Jersey. *Id.* at ¶¶ 19, 21. Plaintiff Doe #1 spoke with the crewmember who had also been sexually assaulted by Defendant Johnson, and they "expressed to each other that they were stunned by what had happened." *Id.* at ¶ 19. Plaintiffs and the crewmember met together to "piece together" the events of the previous night. *Id.* at ¶¶ 21, 48. Each noted that they had experienced the same effects after drinking from the open beer can provided by Defendant Johnson. *Id.* Upon further investigation, they discovered the symptoms they experienced were consistent with the effects of "date rape" drugs. *Id.*

Plaintiff Doe #1 contacted Defendant Johnson through email to ask if he had any sexually transmitted infections because she feared she contracted one when he raped her. *Id.* at ¶¶ 20, 22. Defendant Johnson replied that he would get tested. *Id.* Plaintiff Doe #1 arrived at her home state on May 11, 2018. *Id.* at ¶ 23. Upon landing, Plaintiff Doe #1 went directly to the hospital to receive preventative treatment for sexually transmitted infections and informed the hospital that she had been raped. *Id.* The hospital reported the rape to the police and a statement was prepared. *Id.* Plaintiff Doe #1 was later informed that she tested positive for the human papilloma virus

CIVIL NO. 21-1356 (JAG)                                                                                4

("HPV"). *Id.* at ¶ 25. Plaintiff Doe #1 had previously been free of sexually transmitted infections. *Id.*

Plaintiffs reported the incident to JetBlue. *Id.* at ¶¶ 24, 50. Plaintiffs allege no corrective actions were taken by JetBlue. *Id.* at ¶¶ 24, 71. Per Plaintiffs,

> the investigation was inadequate because JetBlue failed to investigate all relevant witnesses, failed to scrutinize any pattern of expenses or alcohol purchases by the Defendants during layovers, and failed to review all relevant documentation. . . [and] failed to provide Plaintiffs with Defendant Johnson or Defendant Watson's statements in order to review them and have the opportunity to rebut those statements.

*Id.* at ¶ 72. Furthermore, JetBlue "fail[ed] to terminate Defendants Johnson and Watson," and took no steps to "guarantee that Plaintiff Doe #1 would not run into Defendants Johnson and Watson while at work." *Id.* at ¶ 29. As a result, Plaintiffs have

> bid out of Embraer E190 aircraft flights because Defendants Johnson and Watson would be piloting on those types of flights. . . bidding out [of] Embraer E190 aircraft flights precludes [Plaintiffs] from more than seven hundred and fifty (750) flights, resulting in the significant loss of seniority status and financial opportunities.

*Id.* at ¶¶ 30, 51. Plaintiffs have not worked a flight with Defendants Johnson or Watson after the incident, nor do they allege they had ever worked with Defendants before the incident. *Id.* at ¶ 12-53. Plaintiff Doe #2 had one run in with Defendant Johnson in an employee break room approximately nine (9) months after the event. *Id.* at ¶ 52. Plaintiff Doe #1 frequently looks up Defendants Johnson and Watson's flights to check if their flight plans overlap as she feared an encounter. *Id.* at ¶ 33; *see also* Docket No 132 at 15. Plaintiffs remain in fear of Defendants Johnson and Watson. Docket No. 119 at ¶¶ 34, 50, 127. Plaintiffs feel "humiliated, degraded, victimized, embarrassed and emotionally distressed." *Id.* at ¶¶ 37, 56. They allege "pecuniary losses, emotional

CIVIL NO. 21-1356 (JAG)                                                           5

pain and anguish, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses . . . [as well as] severe emotional and physical distress . . . aggravation, activation, and/or exacerbation of any preexisting conditions." *Id.* at ¶¶ 38, 57.

## STANDARD OF REVIEW

A defendant may move to dismiss an action for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). To survive dismissal under this standard, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id.* at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* at 1965.

At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988). Thus, plaintiff bears the burden of stating factual allegations regarding each element necessary to sustain recovery under some actionable theory. *Goolev v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988). Courts need not address complaints supported only by "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

CIVIL NO. 21-1356 (JAG)                                                                    6

## ANALYSIS

### I.   Claims Against JetBlue

Defendant JetBlue seeks dismissal of Plaintiffs' claims under Title VII; Puerto Rico Laws 100, 69, 17, and 115; and the Constitution of the Commonwealth of Puerto Rico. Docket No. 125.[2] The Court shall address each in turn.

### A.   Sex Discrimination under Title VII, Law 100, Law 69, and Law 17

Plaintiffs allege that JetBlue violated Title VII by "allowing sex discrimination, gender discrimination and a hostile work environment." Docket No. 119 at ¶ 76. Additionally, Plaintiffs claim JetBlue "knew or should have known of pervasive reports of sexual harassment of flight attendants by pilots and had a duty to investigate[,] remedy and deter such conduct." *Id.* at ¶ 66.

Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII grants employees "the right to work in an environment free from discrimination;" in other words, to be free from a hostile work environment. *Hernández v. Wilkinson*, 986 F.3d 98, 102 (1st Cir. 2021). For harassment to be deemed sufficiently severe under a hostile work environment claim, it must "alter the conditions of the victim's employment." *Nieves-Borges v. El Conquistador P'ship, L.P.*, 936 F.3d 1, 10 (1st Cir. 2019)

---

[2] As discussed below, *infra* Section III.A, the common law claims are **DISMISSED WITH PREJUDICE** and these claims shall be analyzed under Article 1802. However, "as Plaintiff's Article 1802 and 1803 claims are based on the same facts that give rise to asserted causes of action under Puerto Rico's special employment statutes—Laws 80 and 100—the former are superseded by the latter." *Reyes-Ortiz v. McConnell Valdes*, 714 F. Supp. 2d 234, 239 (D.P.R. 2010).

(internal citations omitted). To prevail under a claim of hostile work environment due to sexual harassment, a plaintiff must show

> (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Godoy v. Maplehurst Bakeries, Inc.*, 747 F. Supp. 2d 298, 308 (D. P.R. 2010) (citing *Forrest v. Brinker Int'l Payroll Co.*, 511 F.3d 225, 228 (1st Cir. 2007)).

Plaintiffs are members of a protected class, they were subjected to unwelcome sexual harassment, the harassment was based on sex, and the sexually objectionable conduct was objectively and subjectively offensive. Any reasonable person would find the act of sexual assault and drugging to be abusive and it is clear Plaintiffs perceived them as such. *See Hernández*, 986 F.3d at 102 (citing *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)). Notwithstanding, whether a basis for employer liability has been established and whether Plaintiffs have shown that the conditions of their employment were altered is dubious. What Plaintiffs experienced was horrendous and unacceptable. No one should have to face sexual violence or non-consensual drugging. However, in the case at hand, Plaintiffs have not shown a basis under which JetBlue could be found liable for Defendants' actions. Defendants were not Plaintiffs' supervisors. In fact, Plaintiffs had never met Defendants Johnson or Watson, or worked with them prior to the incident; nor have they worked together after the incident. Furthermore, the actions took place squarely outside of working hours and were entirely outside the scope of employment. Here, Defendant Johnson squarely shoulders the liability for his reprehensible actions. As Plaintiffs have

CIVIL NO. 21-1356 (JAG)                                                                          8

not shown a basis for employer liability, the Title VII claims for sex discrimination against JetBlue

cannot survive and are hereby **DISMISSED WITH PREJUDICE**.

Law 100, Law 69, and Law 17 are subject to the same analysis as a Title VII gender

discrimination claim. *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 97 (1st Cir. 2018); *see also*

*Gerald v. Univ. of P.R.*, 707 F.3d 7, 28 (1st Cir. 2013). Accordingly, Plaintiffs' Law 100, Law 69, and

Law 17 claims against JetBlue are also **DISMISSED WITH PREJUDICE**.

### B.   Retaliation under Title VII and Law 115

Title VII also prohibits employers from discriminating against an employee because they

have "opposed any practice made an unlawful employment practice" by Title VII or because they

have "made a charge, testified, assisted or participated in any manner in an investigation,

proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). A plaintiff establishes a *prima facie*

case of retaliation by showing that (1) she engaged in conduct protected by Title VII; (2) she

experienced an adverse employment action; and (3) a causal connection exists between the

protected conduct and the adverse employment action. *Henderson v. Mass. Bay Transp. Auth.*, 977 F.3d

20, 39 (1st Cir. 2020). A plaintiff "must establish that his or her protected activity was a but-for

cause of the alleged adverse action by the employer." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 570 U.S.

338, 360, 362 (2013); *see also Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014). The burden then

shifts to the employer to demonstrate that there was a nondiscriminatory reason for the

employment decision. *Douglas v. J.C. Penney Co., Inc.*, 474 F.3d 10, 14 (1st Cir. 2007).

Plaintiffs have not shown an adverse employment action by JetBlue in retaliation for

reporting the sexual assault or initiating this action. As such, Plaintiffs have not presented a *prima*

CIVIL NO. 21-1356 (JAG)                                                                 9

*facie* case against JetBlue and their Title VII retaliation claims are hereby **DISMISSED WITH PREJUDICE**.

Law 115 claims are subject to the same analysis as Title VII's retaliation provision. *See Rivera-Rivera*, 898 F.3d at 97; *see also Lahens v. AT&T Mobility P.R., Inc.*, 28 F.4th 325, 338 (1st Cir. 2022). Accordingly, Plaintiffs' Law 115 claims against JetBlue are also **DISMISSED WITH PREJUDICE**.

### C.  Article II of the Constitution of Puerto Rico

Plaintiffs assert claims under Article II, §§ 1, 8, and 16 of the Constitution of the Commonwealth of Puerto Rico, alleging that "Defendant JetBlue is liable to Plaintiffs for not providing adequate protection to Plaintiffs in their work of employment, prior to, and subsequent to the incident giving rise to these judicial claims." Docket No. 119 at ¶ 153. The Court disagrees.

Sections 1, 8, and 16 of Article II provide

Sec. 1. [Human dignity and equality . . .]

The dignity of the human being is inviolable . . . .

Sec. 8. [Protection against attacks on honor, reputation, and private life]

Every person has the right to the protection of law against abusive attacks on his honor, reputation, and private or family life.

Sec. 16. [Rights of employees]

The right of every employee to choose his occupation freely and to resign therefrom [. . .] to protection against risks to his health or person in his work or employment . . . .

*Arroyo v. Rattan Specialties, Inc.*, 117 P.R. Offic. Trans. 43, 69 (1986). Plaintiffs have not established that they are entitled to relief under Article II or created a triable issue of fact as to this claim

CIVIL NO. 21-1356 (JAG)                                                                 10

against JetBlue. *See Erazo-Vazquez v. State Indus. Prod. Corp.*, 2021 WL 3910248, *24-26 (D. P.R. Aug. 31, 2021); s*ee also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."). As such, Plaintiffs' constitutional claims as to JetBlue are hereby **DISMISSED WITH PREJUDICE**.

II.    **New York and Massachusetts State Law Claims**

Plaintiffs bring forth various claims under New York and Massachusetts State Law. Docket No. 119 at ¶ 1. Because the Court dismisses Plaintiffs' sole federal claim under Title VII, *see supra* Section I.A and I.B, the case comes before this Court under diversity jurisdiction. It is settled law that "a federal court sitting in diversity must apply the substantive law of the forum state." *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011) (citing *Erie R.R. Co v. Tompkins*, 304 U.S. 64, 78 (1938)); *see also Suero-Algarin v. CMT Hosp. HIMA San Pablo Caguas*, 957 F.3d 30, 39 (1st Cir. 2020) ("Pursuant to the Supreme Court's seminal decision in [*Erie*] federal courts sitting in diversity apply   state substantive law and   federal   procedural law.")   (internal   citations omitted). Furthermore, all the relevant facts and the incident that triggered the complaint occurred in Puerto Rico. As such the Court must apply the substantive laws of Puerto Rico. Accordingly, Plaintiffs' claims under New York and Massachusetts State Law are **DISMISSED WITHOUT PREJUDICE**.

III.    **Claims Against Defendant Johnson**

In his Motion to Dismiss, Defendant Johnson seeks dismissal of Plaintiffs' common law, intentional tort claims for assault and battery, negligent infliction of emotional distress,

CIVIL NO. 21-1356 (JAG)                                                                11

negligence, and failure to warn.[3] Docket No. 126. Defendant Johnson moves for dismissal of said

claims "as unsupported by Puerto Rico civil law." *Id.* at 1. Defendant Johnson additionally requests

dismissal of the Puerto Rico employment law claims as they pertain to him individually. *Id.*[4]

### A.  Common Law Claims

Defendant Johnson seeks dismissal of Plaintiffs' assault and battery, negligent infliction of

emotional distress, as well as the negligence and failure to warn claims as they "stem from common

law principles." Docket No. 126 at 8-9. The Court understands that Defendant Johnson is arguing

that such claims cannot be brought forth solely under common law principles and must be

founded in Puerto Rico civil law. The Court agrees. However, the Court disagrees with Defendant

Johnson's argument that under Puerto Rico's tort statute, Article 1802, common law is limited in

application but for "comparative analysis." *Id.*

As support of their argument that this Court should not look to common law principles

when reviewing Article 1802 tort claims, Defendant Johnson cites *Republic Sec. Corp. v. P.R. Aqueduct

and Sewer Auth.*, 674 F.2d 952 (1st Cir. 1982). *Republic Sec. Corp.*, however, pertains to restitution as a

result of a contract annulled in 1960 between the Puerto Rico Aqueduct and Sewer Authority and

Mechanical Contracts, Inc. *Id.* at 953. Defendant Johnson's Motion to Dismiss quotes: "in

interpreting the Civil Code of Puerto Rico . . . authoritative commentaries on analogous provisions

of the Spanish Civil Code are more persuasive than common law analogies, which are inapplicable

---

[3] Plaintiffs concede to dismissal of the intentional infliction of emotional distress claim against Defendant
Johnson. Docket No. 133 at 5.

[4] Defendant Johnson furthermore moved for dismissal of the New York and Massachusetts state law
claims. Docket No. 126 at 1. Plaintiffs' state law claims are addressed above in Section II.

but for the purposes of comparative analysis." *Republic Sec. Corp.*, 674 F.2d at 958. However, the referred section discusses the calculation of interest rates and does not address Article 1802 tort actions. Defendant Johnson additionally cites *Mateo v. Empire Gas Co.*, 841 F. Supp. 2d 574 (D.P.R. 2021), in which the court held that two attorneys who had been admitted *pro hac vice* be required to apply for regular admission to the District Court of Puerto Rico due to their frequent appearances in this District. *Id.* at 575. The extent to which the case discusses tort actions is limited to a discussion that analyzes the competency of the attorneys to practice in Puerto Rico. The court provides that the "field of torts . . . is controlled . . . by the civil law system," and qualifies that "when applying Puerto Rico law to matters of local concern, [the court] should defer to the decisions of the Commonwealth's Supreme Court." *Id.* at 582. Nevertheless, while plaintiffs cannot bring forth claims purely founded in common law principles, the Supreme Court of Puerto Rico has often applied common law tort principles to Article 1802 claims. *See United States* v. *Marshall*, 391 F.2d 880, 883 (1st Cir. 1968) ("Far from being reluctant to appeal to sources based on the common law, the Supreme Court of Puerto Rico, in the three cases referred to, relied exclusively on common law authority, apart from citations to its own prior opinions."); *see also Montes v. Fondo del Seguro del Estado*, 87 D.P.R. 199 (1963). "Accordingly, consistent with our longstanding practice in cases where the Puerto Rico court has not diverged from common law principles [absent controlling Puerto Rico law] we adopt the *Restatement (Second) of Torts* as the appropriate framework for analysis . . . ." *Rodriguez v. United States*, 54 F.3d 41, 45 (1st Cir. 1995) (cleaned up). As Defendant Johnson does not move for the dismissal of the Article 1802 claims, Plaintiffs' common law claims are actionable under Puerto Rico's general tort statute.

CIVIL NO. 21-1356 (JAG)                                                                    13

Defendant Johnson argues that "[P]laintiffs can only have one existing cause of action under Puerto Rico's general tort statute." Docket No. 126 at 11. Notwithstanding, Defendant Johnson committed various distinct acts that caused injury to Plaintiffs and would give rise to multiple Article 1802 claims. Those acts being (1) the drugging of Plaintiff Doe #1, (2) the drugging of Plaintiff Doe #2, and (3) the rape of Plaintiff Doe #1. Per the above stated reasoning, Plaintiffs' common law claims are **DISMISSED WITH PREJUDICE**; the claims are actionable under Article 1802.

### B. Puerto Rico Employment Law Claims

The Court now addresses the Puerto Rico employment law claims under Law 100, 69, and 17.[5] Law 100 provides that employers cannot discriminate against an employee on the basis of sex. P.R. LAWS ANN. tit. 29, § 146. Similarly, Law 69 and 17 prohibit gender discrimination in the workplace.

> Law 17 and 69 serve virtually the same purposes and outlaw essentially identical behavior, and Law 69's specific prohibition on gender discrimination overlaps with Law 17's bar on sexual harassment . . . [F]or our purposes, the substantive law of Puerto Rico on sexual harassment appears to be aligned with Title VII law; the latter's precedents being used freely to construe the former.

*Gerald*, 707 F.3d at 28 (cleaned up). Under Title VII, there is no individual employee liability. *Fantini v. Salem State Coll.*, 557 F.3d 22, 30 (1st Cir. 2009); *Vera v. McHugh*, 622 F.3d 17, 25 n.8 (1st Cir. 2010). However, "[t]he Puerto Rico Supreme Court has interpreted Law 100, unlike Title VII, to permit holding agents, officials, administrators, and supervisors civilly liable as 'employers' under the statute." *Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 25 n.7 (1st Cir. 2011). "[A] company

---

[5] Plaintiffs concede to dismissal of the Law 115 claims as to Defendant Johnson. Docket No. 133 at 9.

agent, official, administrator or supervisor incurs personal civil liability under Law Nos. 100, 69, and 17, in addition to the real employer, for the sexual harassment acts committed by him or her against a worker or employee of said employer." *Santiago v. WHM Carib, LLC*, 126 F. Supp. 3d 211, 216 (D. P.R. 2015) (cleaned up); *see also Rosario Toledo v. Distribuidora Kikuet, Inc.*, 151 P.R. Offic. Trans. 634 (2000) (the statutes' "definitions of 'employer' include the employer's supervisors, officials, administrators and agents, and invoke the unequivocal intention of the Legislative Assembly to make them liable for workplace sexual harassment acts when committed by them."). Notwithstanding, liability is subject to the same analysis as a Title VII claim. *Rivera-Rivera*, 898 F.3d at 97; *see also Gerald*, 707 F.3d at 28. "[T]he intention of [the Puerto Rico] Legislature [is] to prohibit sexual harassment *in employment*." P.R. LAWS ANN. tit. 29, § 155 (emphasis added). In essence, plaintiffs must demonstrate that they have been forced "to work in a discriminatory hostile or abusive environment . . . [that] interferes with the employee's work performance." *Godoy*, 747 F. Supp. 2d at 308.

There is no question that Plaintiffs are members of a protected class, that they were subjected to unwanted sexual harassment, that the harassment was based on sex, that the harassment was exceedingly severe, and that the conduct was objectively and subjectively offensive.[6] *Id.* (citing *Forrest*, 511 F.3d at 228). Nevertheless, Defendant Johnson's conduct was entirely outside of the scope of employment. Furthermore, Plaintiffs have never worked alongside Defendant Johnson, neither prior to nor after the events outlined in the Complaint. The Court understands and is sympathetic to the reality that the effects of sexual violence reverberate into

---

[6] *See supra* Section I.A of this Opinion and Order for the legal standard for a *prima facie* claim of hostile work environment as outlined in *Godoy*, 747 F. Supp. 2d at 308.

CIVIL NO. 21-1356 (JAG)                                                                                    15

every aspect of a victim's life; however, Defendant Johnson's actions cannot be molded into Law

100, 69, and 17 claims simply because he is employed by the same company as Plaintiffs. As a result,

the claims under Law 100, 69, and 17 against Defendant Johnson are hereby **DISMISSED WITH**

**PREJUDICE**.

   IV.   **Claims Against Defendant Watson**

        The Court turns to Defendant Watson's Motion to Dismiss, Docket No. 127, and the claims

alleged against him. Plaintiffs bring forth common law claims of assault and battery; violations of

Puerto Rico Laws 100, 69, and 17; as well as Article II of the Constitution of Puerto Rico and Article

1802.[7] Docket No. 119. However, the evidence presented by Plaintiffs is not sufficient to pursue

any of these claims as to Defendant Watson. As discussed above, *supra* Section III.A, the claims

under common law shall be analyzed under Article 1802. Thus, the only actions that remain as to

Defendant Watson are the claims under Article 1802, the Puerto Rico employment statutes (Laws

100, 69, and 17), and Article II of the Constitution of Puerto Rico.

        The Puerto Rico general negligence statute, Article 1802,

> provides that a person who by an act or omission causes damage to
> another through fault or negligence shall be obliged to repair the
> damage so done. The concept of fault in the statute is as broad as
> the behavior of human beings, and includes any fault that causes
> harm or injury.

*Escalera-Salgado v. United States*, 261 F. Supp. 3d 163, 167-68 (D. P.R. 2016) (cleaned up). However, as

Defendant Watson highlights in his Motion to Dismiss, Plaintiffs have not shown an act or

omission at the hands of Defendant Watson that resulted in the harms alleged. "Plaintiffs do not

---

[7] Plaintiffs concede to dismissal of the intentional infliction of emotional distress, negligent infliction of
emotional distress, and Law 115 claims as to Defendant Watson. Docket No. 134 at 10, 13.

CIVIL NO. 21-1356 (JAG)                                                                 16

allege that Watson touched or handed them the beer can which had been drugged," and it is uncontested that Watson was not in the hotel room where the sexual assault purportedly took place; and that Watson did not rape or assault any of the women." Docket No. 127 at 2-3. The extent of the allegations against Defendant Watson are that he intended to rape Plaintiff Doe #2 had she not become ill from the drugged beer provided by Defendant Johnson. Docket No. 119 at ¶ 46. Additionally, there is no claim that Defendant Watson was aware that the beer was drugged, nor that he was aware of the horrendous actions of Defendant Johnson. As such, the Court agrees that "[i]n the absence of any allegations linking Watson to the drugging and/or sexual activity which serve as the predicate for the remaining causes of action, all claims against him should be dismissed with prejudice." Docket No. 127 at 3. The adage "you are the company you keep," does not alone provide a basis for legal fault, though Defendant Watson would be wise to reflect on such words. Plaintiffs' Article 1802 claims as to Defendant Watson are hereby **DISMISSED WITH PREJUDICE**.

As to the local employment statutes, *see supra* Section III.B, Plaintiffs have never worked alongside Defendant Watson nor have Plaintiffs alleged he engaged in any sexually objectionable conduct. Plaintiffs have not presented an act by Defendant Watson that would create an actionable claim under Laws 100, 69, and 17. As such, the Law 100, 69, and 17 claims against Defendant Watson are hereby **DISMISSED WITH PREJUDICE**.

Finally, as to the constitutional claims asserted against Watson, Plaintiffs have not established that they are entitled to relief under Article II or created a triable issue of fact as to this claim. *See supra* Section I.C. As such, Plaintiffs' constitutional claims as to Defendant Watson are hereby **DISMISSED WITH PREJUDICE.**

CIVIL NO. 21-1356 (JAG)                                                                  17

## CONCLUSION

For the aforementioned reasons, Defendant JetBlue's Motion to Dismiss and Defendant Watson's Motion to Dismiss are hereby **GRANTED**. All claims against JetBlue and Defendant Watson are hereby **DISMISSED WITH PREJUDICE**. Defendant Johnson's Partial Motion to Dismiss is hereby **GRANTED**. Plaintiffs' Article 1802 and Puerto Rico constitutional law claims against Defendant Johnson remain. Partial Judgment shall be entered accordingly

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Monday, February 27, 2023.


s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge