IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| JANE DOE #1 and JANE DOE #2,<br><br>**Plaintiffs,**<br><br>v.<br><br>JETBLUE AIRWAYS CORPORATION, ERIC JOHNSON, individually, and DAN WATSON, individually,<br><br>**Defendants.** | CIVIL NO. 21-1356 (JAG) |

## MEMORANDUM AND ORDER

GARCIA-GREGORY, D.J.

Before the Court is Plaintiffs, Jane Doe #1 and Jane Doe #2's ("Plaintiffs") Motion for Reconsideration of the Court's Opinion and Order dismissing Plaintiffs' employment law claims against co-Defendant JetBlue Airway Corporation ("JetBlue") and co-Defendant Eric Johnson ("Johnson") and dismissing all claims against co-Defendant Dan Watson ("Watson"). Docket No. 160. For the reasons set forth below, Plaintiffs' Motion for Reconsideration is hereby **DENIED**.

Motions for reconsiderations "are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been and intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Zimny*, 846 F.3d 458, 467 (1st Cir. 2017) (cleaned up). Therefore, motions to amend an opinion may not be used by the losing party to "rehash[] arguments that the district court had already rejected and advance[] new theories that it could and should have advanced earlier." *Caribbean Mgmt. Grp. v. Erikon Llc*, 966 F.3d 35, 45 (1st Cir. 2020).

CIVIL NO. 21-1356 (JAG)                                                                 2

## I. Claims against Watson and Johnson

While the Motion for Reconsideration mentions the dismissed claims against Watson, the Motion for Reconsideration does not substantively argue why the Court's dismissal of the action against Watson should be reviewed.[1] *See* Docket Nos. 160; 163. As underscored in Watson's Opposition, Plaintiffs' Motion for Reconsideration "limits the scope of their request for reconsideration to the claims against JetBlue and Johnson." Docket No. 163, ¶ 2. The Court therefore will not reconsider the dismissal of the claims asserted against Watson.

Similarly, the Motion for Reconsideration does not contain substantive discussion as to why the Court should revisit its dismissal of the common law claims, Title VII claims, and Law 100, 69, and 17 claims as they pertain to Defendant Johnson. *See* Docket No. 160 at 8-14. The discussion focuses on the basis for employer liability against JetBlue but does not make arguments specific to Johnson.[2] As "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," *United States ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 125 (1st Cir. 2013) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)), the Court deems waived any arguments as to reconsideration of the dismissal of certain claims asserted against Johnson.

---

[1] The Court previously noted that Plaintiffs' pleadings contain no allegations that could possibly show any liability by Watson. *See* Docket No. 152 at 16 ("The extent of the allegations against Defendant Watson are that he intended to rape Plaintiff Doe #2 had she not become ill from the drugged beer provided by Defendant Johnson. Docket No. 119, ¶ 46. Additionally, there is no claim that Defendant Watson was aware that the beer was drugged, nor that he was aware of the horrendous actions of Defendant Johnson.").

[2] "Plaintiffs' Article 1802 and Puerto Rico constitutional law claims against Defendant Johnson remain." Docket No. 152 at 17.

CIVIL NO. 21-1356 (JAG)                                                                                                3

## II. Claims against JetBlue

Plaintiffs argue reconsideration is warranted as they have acquired newly discovered evidence, not previously available to them, that would alter the Court's finding that the events in question occurred outside of a work environment. Docket No. 160 at 2, 12. Plaintiffs take issue with the Court's holding that (1) Watson and Johnson were not Plaintiffs' supervisors, (2) the assault occurred outside the workplace, and (3) there is no basis for employer liability. *Id.* at 9-13. The Court shall first address Plaintiffs' claims that they obtained "newly discovered evidence that [they] did not have access to at the time of their opposition filings." *Id.* at 2.

"Newly discovered evidence that requires a district court to reconsider its decision is evidence that could not 'in the exercise of due diligence' have been presented earlier." *United States v. Cintron*, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (citing *Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25*, 426 F.3d 416, 422 (1st Cir. 2005)). "Newly proffered evidence 'hardly qualifies as newly discovered evidence.'" *Newman v. Lehman Bros. Holdings*, 901 F.3d 19, 29 (1st Cir. 2018) (citing *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 86 (1st Cir. 1997)).

The "newly discovered evidence" Plaintiffs rely upon is a deposition of a designated JetBlue corporate representative from an ongoing case in the United State District Court for the Eastern District of New York. Docket Nos. 160-1 at 4; 163-1.[3] This deposition was taken on February 6, 2023, three weeks prior to the Court's filing of the Opinion and Order at issue here. *Id.* Plaintiffs' counsel was present at this deposition. *Id.* at 5; Docket No. 160 at 12. Thus, this does not qualify as

---

[3] The Court underscores that the deposition was taken in a case in which the plaintiff and defendant were members of the same flight crew. *See* Docket No. 163-1, ¶ 15. The significance of this distinction will be discussed in depth below.

**CIVIL NO.** 21-1356 (JAG) 4

newly discovered evidence, which could not have been presented earlier. Plaintiffs in the exercise of due diligence, could have presented the deposition prior to the Court's entry of the Opinion and Order. Instead, the deposition qualifies as newly *proffered* evidence and does not constitute a basis for reconsideration. Moreover, Rule 12(b)(6) motions to dismiss "are decided based solely on the face of the complaint, without consideration of any other documents. Limited exceptions to this rule allow a court to consider documents that are incorporated into or attached to the complaint, as well as matters of public record subject to judicial notice." *Cebollero-Bertran v. P.R. Aqueduct & Sewer Auth.*, 4 F.4th 63, 69 n.4 (1st Cir. 2021). Plaintiffs have not shown that any of these exceptions are applicable here and, therefore, the Court cannot consider this evidence when deciding a motion under Rule 12(b)(6).

    A. **Hostile Work Environment Claims Under Title VII, Law 100, Law 69, and Law 17**

Plaintiffs also contend that the Court erred in holding that Johnson was not a supervisor. Per Plaintiffs, the Court erred in its analysis as to the hostile work environment claims and "stated without explanation,[4] that Defendants were not Plaintiff's supervisors, [which] is a credibility determination this Court is not authorized to undertake because it invades the province of the [j]ury." Docket No. 160 at 10 (cleaned up). Plaintiffs contest that, consequently, the Court's analysis of employer liability under Title VII was flawed. In the interest of justice, the Court will reexamine the issue of JetBlue's liability.

---

[4] The Court did provide an explanation in its Opinion and Order, specifically stating that "Plaintiffs had never met Defendants Johnson or Watson or worked with them prior to the incident; nor have they worked together after the incident." Docket No. 153 at 7.

**CIVIL NO. 21-1356 (JAG)**                                                                                                      5

### 1. Supervisory Status under Title VII

It is Plaintiffs' position that the Court should have employed the analysis applicable in hostile work environment claims in which the harasser is a supervisor. "A plaintiff must satisfy different standards for establishing employer liability in a hostile work environment case depending on whether the harasser is a supervisor or co-employee of the victim." *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 401 (1st Cir. 2002). "If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (cleaned up).

"For purposes of Title VII, an employee is a supervisor if he is empowered by the employer to take tangible employment actions *against the victim.* In other words, the alleged supervisor must have the authority to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Fisher v. Town of Orange*, 964 F. Supp. 2d 103, 115 (D. Mass. 2013) (emphasis added) (cleaned up) (citing *Vance*, 570 U.S. at 422; and *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998)). "The key to determining supervisory status is the degree of authority possessed by the putative supervisor. Thus, courts must distinguish employees who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers." *Noviello v. City of Bos.*, 398 F.3d 76, 95-96 (1st Cir. 2005) (cleaned up). Thus, contrary to Plaintiffs' argument, the caselaw is clear that the Court may resolve the question of supervisor status as a matter of law. *Vance.*, 570 U.S. at 443 ("[T]he question of supervisor status, when contested, can very often be resolved as a matter of law before trial.").

Plaintiffs contend

**CIVIL NO. 21-1356 (JAG)**                                                                 6

> that Defendants Johnson and Watson, as commanding officers of Jet Blue flights, held supervisory positions particularly as compared to flight attendants who are subordinate to commanding officers. By virtue of their pilot status, Jet Blue had conveyed supervisory authority on both Defendants Johnson and Watson who held power as pilots over, among other things, flights the Plaintiffs could be assigned out of Boston. Additionally, flight attendants are trained to obey pilots. Pilots are referred to as Pilots in Command during the flight and usually take control over all flight accommodations, transportation and decisions involving layovers. Pilots may also expel a flight attendant for insubordination and may bar a flight attendant from a flight crew.

Docket No. 160 at 10. "[P]laintiff[s] use[] the word 'supervisor' indiscriminately, referring to [all pilots] as 'supervisors' and making no distinctions among them. That approach elevates nomenclature over actual authority. When we shift the focus to those persons whose actual authority made them supervisors in the relevant sense, a different picture emerges." *Noviello*, 398 F.3d at 96. It is uncontested that Plaintiffs had never met or interacted with Johnson prior to their meeting at the beach, nor have they ever been part of a flight crew with Johnson. Docket No. 119, ¶¶ 12-53. And the Complaint is devoid of any factual allegation that Johnson had any authority to effect a significant change in Plaintiffs' employment status. Simply put, there are no alleged facts that show Johnson ever served as Plaintiffs' supervisor within the meaning of the law.

   **2. Work Environment and Basis for JetBlue's Liability**

Plaintiffs also argue that, even if the Court was to find that Johnson was not a supervisor, JetBlue should still be found liable as "the conduct at issue occurred within the confines of Plaintiffs' work environment . . . [and JetBlue] failed to take appropriate remedial action." Docket No. 160 at 11.

To prevail on a hostile work environment claim under Title VII, Plaintiffs must show

> (1) that [they are] [] member[s] of a protected class; (2) that [they were] subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was

**CIVIL NO. 21-1356 (JAG)** 7

> sufficiently severe or pervasive so as to alter the conditions of [Plaintiffs'] employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Crowley* v. *L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002) (citation omitted). Assuming *arguendo* that Plaintiffs have shown that the conditions of employment were altered in a manner that created an abusive work environment, JetBlue's liability centers around the sixth prong.[5] "[O]ther courts have held that generally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from the workplace setting." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 335 (6th Cir. 2008) (citing *Duggins v. Steak'N Shake, Inc.*, 3 F. App'x 302, 311 (6th Cir. 2001)). Notwithstanding, the employer can be held liable for conduct perpetuated by a non-supervisory employee "when [the victim] employee is forced to work for, or in close proximity to, someone who is harassing her outside the workplace[;] the employee may reasonably perceive the work environment to be hostile." *Duggins*, 3 F. App'x at 311 (citing *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)).

Plaintiffs rely on *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128, 135 (2d Cir. 2001) to argue that "a hotel during a layover would be considered a work environment." Docket No. 160 at 12. In *Ferris*,

---

[5] Plaintiffs further posit that "the Court [] doubted whether Plaintiffs have established that 'the conditions of their employment were altered.'" Docket No. 60 at 13 (citing Docket No. 157 at 7). The Court clarifies that it did not make a finding as to whether the conditions of Plaintiffs' employment were altered. Rather, the Court stated that "whether Plaintiffs have shown that the conditions of their employment were altered is *dubious*." Docket No. 157 at 7(emphasis added). The decision truly hinged on whether there was a legal basis for employer liability. *Id.* ("However, in the case at hand, Plaintiffs have not shown a basis under which JetBlue could be found liable for Defendants' actions.").

**CIVIL NO.** 21-1356 (JAG)                                                                                          8

the Second Circuit analyzed whether "a brief layover in a foreign country"[6] constitutes a work environment and noted that "the question is close" but ultimately held that "the rape could be found to have occurred in a work environment within the meaning of Title VII." *Ferris*, 277 F.3d at 135. Distinct from the case at hand, the parties in *Ferris* were members of the same flight crew and the Second Circuit considered the fact that flight crews "generally stay in a block of hotel rooms that the airline reserves for them and pays for. The airline in addition provides them *as a group* with ground transportation by van from the airport to the hotel on arrival, and back at the time for departure." *Id*. The Second Circuit also noted that fellow crew members are often the only acquaintances crew members will have in foreign locations and, as a result, they often spend their off-duty hours together. *Id*. The facts before this Court are readily distinguishable from the facts relied upon by the Second Circuit in *Ferris*.

In the present case, Plaintiffs and Johnson were not part of the same flight crew. They were not transported as a group, and they were not acquainted with Johnson prior to meeting him on the beach. In fact, Plaintiffs had no knowledge that Johnson was as employee of JetBlue until after they had approached him and struck up conversation. Docket No. 119, ¶ 15. This differs materially from the circumstances analyzed in *Ferris* that "compel" crew members to "band together for society and socialize as a matter of course." *Ferris*, 277 F.3d at 135. Had Plaintiffs been part of a flight crew with Johnson, the Court would not hesitate to find the acts occurred within the workplace setting. Furthermore, there are no facts that allege Plaintiffs have interacted with,

---

[6] While Puerto Rico is not a foreign country, the Court understands that many of the same considerations relied upon in *Ferris* could be applicable to layovers in Puerto Rico. *See, e.g.*, [substitute for short citation]. ("Most likely they do not speak the local language. In all likelihood, they do not have family, friends, or their own residences there.").

**CIVIL NO.** 21-1356 (JAG) 9

worked in proximity to, or have served as attendants on a flight piloted by Johnson, neither before nor after the assault at issue here. Docket No. 119, ¶¶ 12-53. The only encounter alleged in the Complaint, other than the assault, is that Plaintiff Doe #2 saw Johnson once in an employee break room approximately nine (9) months after the event. Docket No. 119, ¶ 52. They did not speak or interact with each other and Plaintiff Doe #2 "promptly left the room." *Id.* Thus, while some courts have noted "that in some cases the mere presence of an employee who has engaged in particularly severe or pervasive harassment can create a hostile working environment . . . this statement, however, does not endorse a blanket rule." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 718 (3d Cir. 1997) (cleaned up). Courts must consider whether the facts demonstrate that the parties interact in the work environment, as well as the nature and frequency of those interactions. *See Ellison*, 924 F.2d at 883 ("Given the scant record on appeal, we cannot determine whether a reasonable woman could conclude that [the defendant's] mere presence at [the same office] six months after the alleged harassment would create an abusive environment. Although we are aware of the severity of [the defendant's] conduct . . . we do not know how often [the plaintiffs] would have to interact at [the office]."). Thus, the Court cannot find that the actions occurred within a work environment and, therefore, there is no basis for employer liability against JetBlue under Title VII.[7]

---

[7] The Court additionally notes that, while the events occurred outside of the work environment, JetBlue did open an investigation after Plaintiffs reported the assault. Docket No. 119, ¶ 72. While Plaintiffs challenge the adequacy of the investigation, their report and the subsequent investigation has placed JetBlue on notice of Johnson's alleged unlawful behavior. *Id.* JetBlue cannot claim in any potential future proceedings that there "is no evidence of any prior misconduct on [Johnson's] part," or that "the first that [JetBlue] knew (or could have known) about his assaultive demeanor" is when another victim comes forward. *Noviello*, 398 F.3d at 97.

**CIVIL NO. 21-1356 (JAG)**                                                                                                    10

### B. Sex Discrimination Claims under Title VII, Law 100, Law 69, and Law 17.

Plaintiffs also challenge the Court's analysis of the sex discrimination claims under Title VII, Law 100, Law 69, and Law 17, arguing that "[i]n ruling on Defendants' motions to dismiss, the Court conflated Plaintiffs' sex/gender discrimination and hostile work environment claims." Docket No. 160 at 14. However, sexual harassment and hostile work environment are both forms of sex discrimination. *See Morrison v. Carleton Woolen Mills*, 108 F.3d 429, 439 (1st Cir. 1997) ("Hostile environment sexual harassment is a particular species of sex discrimination."); *see also Pérez-Cordero v. Wal-Mart P.R., Inc.*, 656 F.3d 19, 26 (1st Cir. 2011) ("The Supreme Court has cautioned, however, that the 'rough demarcation' between quid pro quo claims and hostile work environment claims may be of 'limited utility,' other than to generally describe alternative approaches to proving sex-based employment discrimination."). These are not completely separate causes of action in the sense that they are different theories under which one proves the existence of sex discrimination in the workplace. While sex discrimination may take various forms, Plaintiffs' pleadings center on sex discrimination in the form of sexual harassment and a hostile work environment that JetBlue allegedly failed to remedy. *See* Docket Nos. 119, ¶¶ 30, 38, 57, 76; 132 at 23-24, 27-28.

Nonetheless, turning to the disparate treatment claim, "[u]nder Title VII, an employer may not discharge any individual, or otherwise . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 88 (1st Cir. 2018) (cleaned up).

> A prima facie case for discrimination based on disparate treatment presents a four-part test: (1) the plaintiff must be a member of a protected class; (2) she must be qualified for her job;

**CIVIL NO. 21-1356 (JAG)** 11

> (3) she must suffer an adverse employment action at the hands of her employer; and (4) there must be some evidence of a causal connection between her membership in a protected class and the adverse employment action.

*Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 70 (1st Cir. 2011) (citations omitted). The Court's analysis centers on the third prong. Plaintiffs argue that "Jet Blue's failure to meaningfully respond to Plaintiffs' sexual assault and sexual harassment complaints and effectively tolerate their harassment constitutes an adverse employment action as a matter of law." Docket No. 160 at 15. Specifically, Plaintiffs argue that JetBlue failed to "safeguard the Plaintiffs from being forced to interact with Defendants Johnson and Watson while at work . . . [and] forced the Plaintiffs to 'bid out' of specific flights that Defendants Johnson and Watson would be on, in order to avoid them." *Id.*

This claim is analogous to a transfer, which constitutes an adverse employment action if it "result[ed] in diminution in salary or a loss of benefits." *Caraballo-Caraballo v. Corr. Admin.*, 892 F.3d 53, 61 (1st Cir. 2018) (citations omitted). "The fact that a transfer leaves an employee with significantly different responsibilities, may make the transfer actionable." *Id.* (cleaned up). Other Circuit Courts have noted that employers might face challenges as they balance their obligations under Title VII with an accused employee's due process rights. *See Harris v. L & L Wings, Inc.*, 132 F.3d 978, 984 (4th Cir. 1997) ("We are mindful of the difficulty employers face when dealing with claims of harassment, finding themselves between the rock of an inadequate response under Title VII and the hard place of potential tort liability for wrongful discharge of the alleged harasser. The legal standard of 'prompt and adequate remedial action' in no way requires an employer to dispense with fair procedures for those accused or to discharge every alleged harasser."); *Swenson v. Potter*, 271 F.3d 1184, 1196-97 (9th Cir. 2001) ("Employees are no better served

**CIVIL NO.** 21-1356 (JAG)                                                                                                   12

by a wrongful determination that harassment occurred than by a wrongful determination that no harassment occurred. We should be wary of tempting employers to conduct investigations that are less than fully objective and fair. Title VII in no way requires an employer to dispense with fair procedures for those accused or to discharge every alleged harasser.") (cleaned up); *see also Scarberry v. ExxonMobil Oil Corp.*, 328 F.3d 1255, 1262 (10th Cir. 2003) ("[I]f we required employers to impose discipline without investigation or to impose excessive discipline, employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination.") (cleaned up); *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) ("Employers might believe that they could only avert liability by firing an alleged harasser, yet the law does not demand such extreme action in every case. Title VII's purpose is remedial, not punitive."); *Swenson*, 271 F.3d at 119 ("Failure to punish the accused harasser only matters if it casts doubt on the employer's commitment to maintaining a harassment-free workplace.").

In the present case, JetBlue opened an investigation after Plaintiffs reported the assault. Docket No. 119, ¶ 72. Plaintiffs challenge the adequacy and finding of the investigation. However,

> [e]ven assuming that the investigation was less than perfect . . . the only possible consequence of a better investigation could have been to make out a stronger case for disciplining [Defendants]. But the purpose of Title VII is remedial—avoiding and preventing discrimination—rather than punitive.

*Swenson*, 271 F.3d at 1197 (citation omitted). It is uncontested that Plaintiffs had never worked with Defendants Johnson or Watson prior to the incident; nor have they worked together after the incident. Thus, the facts as alleged place the Court in the difficult position of finding that JetBlue's failure to place protective barriers between employees that have never interacted, and have never been scheduled to work together, could somehow constitute an adverse employment action under Title VII's framework. Thus, Plaintiffs' disparate treatment claims against JetBlue fail.

CIVIL NO. 21-1356 (JAG)                                                                                             13

### C. Retaliation Claims under Title VII and Law 115, and Claims under the Constitution of Puerto Rico

Plaintiffs' discussion as to the retaliation claims under Title VII, Law 115, and the Constitution of Puerto Rico attempts to relitigate arguments already considered by the Court. As Plaintiffs have failed to show the existence of newly discovered evidence, an intervening change of law, or a manifest error of law or fact as to these claims, *Ortiz-Rosario v. Toys R Us P.R., Inc.*, 585 F. Supp. 2d 216, 123 (D. P.R. 2007), the Court shall not reconsider its holding dismissing said claims.

### CONCLUSION

The Court understands Plaintiffs' frustrations and is not insensitive to the alleged trauma they suffered. Unfortunately, the Court is bound by existing law, and cannot impute legal liability where none exists. As the pleadings stand, there is no basis to find JetBlue or Watson liable for Johnson's alleged reprehensible actions. The Court commends Plaintiffs for their bravery in bringing forth this action. While the law may fall short of their desired outcome, their actions serve to safeguard any potential future victims. For the aforementioned reasons, Plaintiffs' Motion for Reconsideration is hereby **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this Tuesday, February 06, 2024.

s/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge